IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY PETERSON, on behalf of himself and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| v. | Case No. 20-cv-2503 |
| MIDLAND FUNDING, LLC, MIDLAND CREDIT MANAGEMENT, INC., and ENCORE CAPITAL GROUP, INC., | Judge Sharon Johnson Coleman |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jeffrey Peterson, individually and on behalf of all others similarly situated, brought this action against Midland Funding, LLC, Midland Credit Management, Inc., and Encore Capital Group, Inc. ("Midland") alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq* ("FDCPA") relating to Midland's attempt to collect an unpaid bill connected with a consumer credit card. Before the Court is Midland's motion to compel arbitration and dismiss under Federal Rule of Civil Procedure 12(b)(3). For the reasons stated below, the Court grants Midland's motion.

**Background**

On or about December 3, 2007, Peterson opened a Credit One credit card account with a number ending in "0088". This account was governed by a card agreement that Peterson assented to through his use of the credit card to make purchases. The agreement contained an arbitration provision permitting either party to elect mandatory arbitration of "any controversy or dispute" between the parties. The arbitration provision expressly stated in bold, capital letters that, if not rejected, the provision is binding and mandatory. Also, the card agreement contained a class action

waiver barring Peterson from participating in a class or representing a class in an action at arbitration.

Peterson incurred consumer debts on goods and services used for personal, family, or household purposes on his Credit One credit card. Credit One then sold the account to MHC Receivables, LLC, which in turn sold the account to Sherman Originator III LLC, all of which are related entities. As discussed below, each Bill of Sale assigned, transferred, conveyed, and granted all "rights, title and interest in and to" the purchaser. In July 2017, Midland purchased Peterson's account from Sherman Originator as part of a portfolio of charged-off accounts. Midland maintains that it acquired all "rights, title and interest" in Peterson's account. On the other hand, Peterson asserts that it is unclear whether MHC Receivables, Sherman Originator, or Midland acquired all of the rights of his account, including the right to enforce the arbitration agreement that Credit One included in its credit card terms.

Here, the arbitration provision provides that the arbitration section of the account agreement is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq and that Nevada law shall apply to the extent state law is relevant under the FAA. Thus, while the FAA governs the enforceability of the arbitration provision according to its terms, Nevada law governs the determination of whether a valid agreement to arbitrate exists.

**Legal Standard**

A motion to dismiss under Rule 12(b)(3) for improper venue is the appropriate procedure when a litigant seeks to dismiss a lawsuit based on an arbitration agreement. *Faulkenberg v. CB Tax Franchise Sys.*, LP, 637 F.3d 801, 808 (7th Cir. 2011). Courts grant motions to compel arbitration when: (1) there is an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018). When making a determination under Rule 12(b)(3), district courts may

consider materials outside of the pleadings, including the parties' arbitration agreement. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016); *Continental Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005). In determining whether an agreement's arbitration clause controls, federal courts apply state-law principles of contract formation. *Gupta v. Morgan Stanley Smith Barney*, LLC, 934 F.3d 705, 710 (7th Cir. 2019).

**Discussion**

Whether Midland has the right to enforce the arbitration agreement, as well as the class action waiver, pivots on how the Court construes the various purchase and sales agreements between Peterson, Credit One, Midland, and the other involved entities. It is undisputed that Peterson assented to both the arbitration agreement and the class action waiver with regard to any disputes between himself and Credit One. The arbitration provision specifically contemplates that the account could be assigned by Credit One: "This Arbitration Agreement shall survive: ... (iii) any transfer or assignment of your Account, or any amounts owed on your Account, to any other person." The remaining question before the Court is whether Midland properly acquired the rights to enforce these terms of the agreement when purchasing the debt previously owned by Credit One. The Court concludes that Midland did acquire these rights.

Peterson first contends Midland waived its argument that it was assigned the right to arbitrate because Midland's argument lacked a detailed analysis. Indeed, "[a]rguments that are underdeveloped, cursory, and lack supporting authority are waived." *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020). Despite Peterson's argument to the contrary, however, Midland did not waive this argument because Midland has fully developed the chain of title from Credit One to Midland by properly providing business records and accompanying affidavits authenticating the documents as required under Federal Rule of Evidence 803(6), as discussed directly below.

Turning to the chain of title, as was its right under the account agreement, and after Peterson incurred a debt in his Credit One account, Credit One sold Peterson's account to MHC Receivables, LLC to collect on the accrued debt. The Bill of Sale states:

> Credit One Bank, N.A. ("Assignor") transferred, sold, assigned, conveyed, granted, and otherwise delivered to MHC Receivables, LLC ("Assignee"), **all of Credit One's right, title and interest in and to (i) the accounts . . . and (iii) all claims or rights arising out of or relating to each referenced account.**

(R. 14, Ex. E, 6/30/17 Bill of Sale & Assignment) (emphasis added).

Peterson argues that it is not clear whether this Bill of Sale intentionally transferred to MHC Receivables all rights that Credit One possessed prior to the sale, including the right to enforce the arbitration and class action waiver provisions. In construing the parties' intent, it is black letter law that if the language of the agreement is clear and unambiguous, the Court will enforced it as written. *Washoe Cty. Sch. Dist. v. White*, 396 P.3d 834, 838 (Nev. 2017). Under the clear and unambiguous language of the June 2017 Bill of Sale, which includes the word "all" twice, MHC Receivables purchased the entirety of the Peterson account, including the ability to enforce both the arbitration provision and class action waiver provision when attempting to collect Peterson's debt.

Similarly, MHC Receivables transferred Peterson's account to Sherman Originator. The relevant Bill of Sale states:

> Sherman Originator III LLC ("Seller"), for value received and in accordance with the terms of the Purchase and Sale Agreement by and between Sherman Originator III LLC and Midland Funding LLC ("Buyer"), . . . **does hereby sell, assign and transfer to Buyer, its successors and assigns, all right, title and interest in and to the accounts** . . . [and] is subject to the terms of the Agreement.

(R. 14, Ex. A, 7/26/17 Bill of Sale & Assignment) (emphasis added). Again, under the plain and ordinary meaning of this Bill of Sale, Sherman Originator purchased the entirety of the Peterson account, including the ability to enforce both the arbitration provision and class action waiver provision when attempting to collect Peterson's debt.

Next, in July 2017, Sherman Originator sold Peterson's account to Midland Funding LLC. This Bill of Sale states:

> MHC Receivables, LLC ("MHC") transferred, sold, assigned, conveyed, granted, and otherwise delivered to Sherman Originator III LLC ("Assignee"), **all of MHC's, title and interest in and to (i) the accounts . . . and (iii) all claims or rights arising out of or relating to each referenced account.**

(R. 14, Ex. F, 7/20/17 Bill of Sale & Assignment) (emphasis added). As above, under the unambiguous language of the Bill of Sale, Midland purchased the entirety of Peterson's account, including the ability to enforce both the arbitration provision and class action waiver provision.

Thus, by virtue of these assignments, Midland stepped into the shoes of Credit One when purchasing the Peterson account. Moreover, there is no question that the arbitration agreement entered into at the opening of the account survived "any transfer or assignment of your Account, or any amounts owed on your Account, to any other person" as stated in the credit card agreement. Because Midland stepped into the shoes of Credit One when purchasing the Peterson account, Midland acquired all of the rights that Credit One and Peterson bargained for when opening the account, including the ability to enforce the arbitration provision and class action waiver. Therefore, the Court grant's Midland's motion to compel arbitration.

On a final note, Peterson argues that Midland is judicially estopped from relying on the terms of the credit card agreement because in the related state court collection action, Midland argued that the collection was premised upon an "unwritten contract." "Judicial estoppel is designed to prevent parties from obtaining an unfair advantage by taking a present position that is inconsistent with one successfully taken in the past." *Massuda v. Panda Exp., Inc.*, 759 F.3d 779, 783 (7th Cir. 2014). Midland's assertion in both lawsuits is not inconsistent because under Illinois law, a credit card agreement constitutes an "unwritten contract," even if there is a credit card agreement

5

with terms and conditions. *CACH, LLC v. Moore*, 2019 IL App (2d) 180707, ¶ 12, 133 N.E.3d 661, 664 (2d Dist. 2019). As such, Peterson's judicial estoppel argument is misplaced.

**Conclusion**

Based on the foregoing, the Court grants defendant's motion to dismiss and compel arbitration [14]. Civil case terminated.

**IT IS SO ORDERED.**

Date: 11/16/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge